**ORIGINAL**

# In the United States Court of Federal Claims

No. 18-104C
Filed July 18, 2018
NOT FOR PUBLICATION

**FILED**

**JUL 1 8 2018**

**U.S. COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STEVEN J. OLIVA, ) | |
| ) | |
| Plaintiff, ) | *Pro se*; RCFC 12(b)(6); Failure to State a Claim; Breach of Contract; *In Forma Pauperis*. |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

*Steven J. Oliva*, Fair Oaks Ranch, TX, plaintiff *pro se*.

*David R. Pehlke*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.   INTRODUCTION

Plaintiff *pro se*, Steven J. Oliva, brings this action to recover monetary damages from the government in connection with an alleged breach of an Equal Employment Opportunity ("EEO") settlement agreement (the "Settlement Agreement") by and between plaintiff and the United States Department of Veterans Affairs (the "VA"). *See generally* Compl. The government has moved to dismiss this matter for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. Plaintiff has also moved to proceed in this matter *in forma pauperis*. *See generally* Pl. IFP Mot.

For the reasons discussed below, the Court: (1) **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion to dismiss and (2) **GRANTS** plaintiff's motion to proceed *in forma pauperis*.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this action, plaintiff *pro se*, Steven J. Oliva, seeks to recover certain relocation incentive payments from the government in connection with the alleged breach of the Settlement Agreement that he entered into with the VA on or about January 30, 2015. *See generally* Compl.; *see also id.* at Ex. 1 at 1-2. In the complaint, plaintiff alleges that the VA breached the Settlement Agreement on two occasions. Compl. at 2. First, plaintiff alleges that the VA breached the agreement in March 2015, when the agency "provided a reference which included the disclosure of [a letter of reprimand that plaintiff received in January 2015]." *Id.* Second, plaintiff alleges that the VA also breached the Settlement Agreement in February 2016, when the agency provided his prospective employer with: (1) information that plaintiff "was on a Temporary Duty Assignment;" (2) the identity of plaintiff's current supervisor—Floretta Hardmon; and (3) the contact information for Ms. Hardmon. *Id.*

Plaintiff further alleges that, as a result of these breaches, he lost the opportunity to secure two different employment positions "that would have included relocation incentives and advancement of his career." *Id.* at 3. As relief, plaintiff seeks to recover the "payment of [the] relocation incentives [that] he would have received if not for the two instances of the agency breaching the [Settlement Agreement,]" in the amount of $172,628.00. *Id.* at Prayer for Relief; *see also* Civil Cover Sheet.

#### 1. The Settlement Agreement

In January 2015, plaintiff received a letter of reprimand for accusing a supervisor of pre-selecting an applicant for a position. Compl. at 2; Def. Mot. at 2. On January 30, 2015, plaintiff

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."), the government's motion to dismiss ("Def. Mot."), and plaintiff's response to the government's motion to dismiss ("Pl. Resp."). Unless otherwise noted, the facts recited herein are undisputed.

2

entered into the Settlement Agreement with the VA to resolve a formal grievance that he brought after receiving the letter of reprimand. Compl. at 2.

Pursuant to the terms of the Settlement Agreement, plaintiff agreed to withdraw his informal EEO complaint and to consider his formal grievance resolved in exchange for the VA's commitment to undertake the remedial measures delineated in the Settlement Agreement. *Id.* at 2, Ex. 1 at 1-2. Among the remedial measures that the VA would undertake, the VA agreed to:

> [Provide a] written reference for Mr. Oliva and assurance of a positive verbal reference, if requested—A written reference will be provided by Mr. Eitutis. Should Mr. Eitutis be asked to provide a verbal reference, he will not mention the retracted Reprimand and will limit information provided to that set forth in the written reference.

*Id.* at Ex. 1 at 1.

### 2. The March 2015 Breach

Plaintiff alleges that in March 2015, the VA provided a reference which included the disclosure of the January 2015 letter of reprimand.[2] *Id.* at 2. Plaintiff further alleges that the VA breached the Settlement Agreement when the agency disclosed the letter of reprimand to a potential employer. *Id.*

In 2015, plaintiff pursued a claim with the VA's Office of Resolution Management alleging that the VA breached the Settlement Agreement by disclosing the letter of reprimand. *Id.* The Office of Resolution Management determined that the VA breached the Settlement Agreement in this regard. *Id.* at 2, Ex. 1 at 1. But, the Office of Resolution Management also found that the Settlement Agreement was voidable, because the agreement did not contain certain language contained in the Older Workers Benefits Protection Act. *Id.* at Ex. 1 at 1; *see also* 29 U.S.C. § 626(f)(2). And so, the VA offered plaintiff the option to either elect to void the

---

[2] Plaintiff has also attached to the complaint several emails regarding contacts by either Mr. Eitutis, or Ms. Hardmon and plaintiff's prospective employers. Compl. Ex. 1 at 4-6. In a February 12, 2016, email from Mr. Eitutis to plaintiff, Mr. Eitutis confirms that he had been contacted by one of plaintiff's prospective employers for a reference. *Id.* at Ex. 1 at 5. A February 24, 2016, email from Ms. Hardmon to plaintiff also states that one of plaintiff's prospective employers had contacted her and that Ms. Hardmon had provided a positive reference. *Id.* at Ex. 1 at 5-6. Lastly, an April 22, 2016, email from one of plaintiff's prospective employers to plaintiff states that the prospective employer learned during the reference check that Ms. Hardmon was plaintiff's current supervisor. *Id.* at Ex. 1 at 5.

Settlement Agreement and to pursue an EEO claim, or to elect to ratify the Settlement Agreement and to seek specific performance as a remedy. Compl. Ex. 1 at 1. After plaintiff elected to ratify the Settlement Agreement, the parties ratified the agreement on July 7, 2015. *Id.*

### 3. The February 2016 Breach

Thereafter, plaintiff continued his efforts to secure future employment. *See id.* at 2; Pl. Resp. Ex. 1 at 1-3. In this regard, plaintiff alleges that the VA breached the Settlement Agreement again in February 2016, by informing a potential employer that plaintiff was on a temporary duty assignment and that plaintiff's current supervisor was Floretta Hardmon, and by providing Ms. Hardmon's contact information. Compl. at 2.

Plaintiff also alleges that the VA breached the Settlement Agreement when Ms. Hardmon provided an employment reference for plaintiff "which was not in accordance with the written reference," because Ms. Hardmon was not a person designated to provide this reference under the terms of the Settlement Agreement. *Id.* And so, plaintiff contends that he "was not selected for the position of Healthcare Administrator due to the evasive employment reference check." *Id.*

### 4. The Relocation Incentive Regulations

Also relevant to this breach of contract dispute, the Office of Personnel Management ("OPM") has promulgated regulations governing the payment of relocation incentives for federal employees. *See generally* 5 C.F.R. §§ 575.201, *et seq.* Under these regulations, an agency may pay a relocation incentive to a current employee who must relocate to accept a position in a different geographic area if the agency determines that the position is likely be difficult to fill in the absence of an incentive. 5 C.F.R. § 575.201.

> Specifically, a relocation incentive may be paid to an employee who—
>
> (1) Must relocate to a different geographic area (permanently or temporarily) to accept a covered position in an agency when the position is likely to be difficult to fill; and
>
> (2) Is an employee of the federal government immediately before the relocation.

*See* 5 C.F.R. § 575.205(a).

4

These regulations also provide that, before paying such a relocation incentive, an agency must establish a relocation incentive plan which includes, among other things, the required documentation for determining that a position is likely to be difficult to fill and the requirements for determining the amount of the relocation incentive. 5 C.F.R. § 575.207(a). In addition, the regulations require that the authorized agency official review and approve the relocation incentive determination before the agency pays the incentive. 5 C.F.R. § 575.207(b).[3]

### B. Procedural History

Plaintiff commenced this action on January 22, 2018. *See generally* Compl. On January 22, 2018, plaintiff filed a motion to proceed *in forma pauperis*. *See generally* Pl. IFP Mot.

On April 23, 2018, the government filed a motion to dismiss this matter, pursuant to RCFC 12(b)(6). *See generally* Def. Mot. On May 3, 2018, plaintiff filed a response and opposition to the government's motion to dismiss. *See generally* Pl. Resp. On May 17, 2018, the government filed a reply in support of its motion to dismiss. *See generally* Def. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

### III. LEGAL STANDARDS

### A. *Pro Se* Litigants

Plaintiff is proceeding in this matter *pro se*, without the benefit of counsel. And so, the Court applies the pleading requirements leniently. *Beriont v. GTE Labs., Inc.*, 535 F. App'x 919, 925-26 n.2 (Fed. Cir. 2013) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007)). When determining whether a complaint filed by a *pro se* plaintiff is sufficient to survive a motion to dismiss, this Court affords more leeway under the rules to *pro se* plaintiffs than plaintiffs who are represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594-96 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"); *Matthews v. United States*, 750 F.3d 1320, 1322 (Fed. Cir. 2014). But, there "is no duty on the part of the trial court to

---

[3] The regulations also require that an intended recipient of a relocation incentive agree in writing to a specified period of employment with the agency before the agency can pay the relocation incentive. 5 C.F.R. § 575.210(a).

create a claim which [the plaintiff] has not spelled out in his pleading." *Lengen v. United States*, 100 Fed. Cl. 317, 328 (2011) (brackets existing) (internal quotation marks omitted) (quoting *Scogin v. United States*, 33 Fed. Cl. 285, 293 (1995)).

While "a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney . . . the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)). And so, the Court may excuse ambiguities, but not defects, in the complaint. *See Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015); *see also Demes v. United States*, 52 Fed. Cl. 365, 368 (2002) ("[T]he leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements.").

### B.     RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), this Court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also* RCFC 12(b)(6). To survive a motion to dismiss pursuant to RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And so, when the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity" and determine whether it is plausible, based upon these facts, to find against defendant. *Id.* at 679.

### C.     Jurisdiction And Breach Of Contract Claims

Under the Tucker Act, the Court possesses subject-matter jurisdiction to consider express or implied-in-fact contract claims against the United States. *See Aboo v. United States*, 86 Fed. Cl. 618, 626-27 (2009). Plaintiff bears the burden of proving the existence of a contract with the United States and he must demonstrate that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).

6

To pursue a breach of contract claim against the United States under the Tucker Act, a plaintiff must have privity of contract with the United States. *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citations omitted) ("[T]he 'government consents to be sued only by those with whom it has privity of contract.'"). Plaintiff must also support his contract claim with well-pleaded allegations going to each element of a contract. *See Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (holding that to invoke the jurisdiction of this Court under the Tucker Act, a plaintiff must present a well-pleaded allegation that its claims arose out of a valid contract with the United States); *see also* RCFC 9(k) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies."); *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010).

The requirements for establishing a contract with the United States are identical for express and implied-in-fact contracts. *See Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006); *Huntington Promotional & Supply, L.L.C. v. United States*, 114 Fed. Cl. 760, 767 (2014) ("The elements are the same for an express or implied-in-fact contract. . . ."). Specifically, a plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). A government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 188-89 (1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997). And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* at 187.

Specifically relevant to this matter, the United States Court of Appeals for the Federal Circuit has held "that Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement." *Holmes v. United States*, 657 F.3d 1303, 1312 (Fed. Cir. 2011) ("We do not view Title VII's comprehensive scheme as a bar to the exercise of [Tucker Act] jurisdiction."). The Federal Circuit has also held that, "when a breach of contract claim is brought in [this Court], the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required [to establish subject-matter

7

jurisdiction]." *Id.* at 1314. But, the Federal Circuit has recognized that that the mere existence of a contract does not always means that Tucker Act jurisdiction exists. *Id.*

For example, a contract that expressly disavows money damages would not give rise to Tucker Act jurisdiction. *Id.* Similarly, a Title VII settlement agreement that involves purely nonmonetary relief would not give rise to Tucker Act jurisdiction. *Id.* at 1315. And so, the Court may require a demonstration that a settlement agreement could fairly be interpreted as contemplating money damages in the event of breach, to establish subject-matter jurisdiction. *Id.*

To that end, the Federal Circuit has held that a settlement agreement that inherently relates to monetary compensation, "through relationship to [a plaintiff's] future employment," contemplates money damages in the event of breach. *Id.* at 1316. The absence of any language in a settlement agreement indicating that the parties did not intend for money damages to be available in the event of a breach also shows that such an agreement contemplates the payment of money damages in the event of a breach. *Id.*

## IV. LEGAL ANALYSIS

The government has moved to dismiss this matter pursuant to RCFC 12(b)(6), upon the grounds that: (1) plaintiff fails to state a plausible claim to recover relocation incentive payments and (2) plaintiff fails to plausibly allege that the VA breached the Settlement Agreement by disclosing his letter of reprimand and failing to provide plaintiff with a job reference in the manner specified by the Settlement Agreement. *See* Def. Mot. at 6-9.

Plaintiff counters in his response and opposition to the government's motion to dismiss that he has alleged viable claims to recover relocation incentive payments and for breach of contract in the complaint, because relocation incentives were authorized for the employment opportunities that he maintains have been lost due to the VA's actions. Pl. Resp. at 1-2. Plaintiff also contends that the VA's decision to disclose his temporary duty assignment resulted in plaintiff's loss of an employment opportunity. *Id.* And so, plaintiff requests that the Court deny the government's motion to dismiss.

Plaintiff has also moved to proceed in this matter *in forma pauperis*. *See generally* Pl. IFP Mot.

For the reasons discussed below, the most generous reading of the complaint shows that plaintiff has not stated a plausible claim to recover relocation incentive payments from the government. Plaintiff has, however, plausibly alleged that the government breached the Settlement Agreement by disclosing his letter of reprimand—and the fact that plaintiff was on a temporary duty assignment—and that these alleged breaches resulted in the loss of future employment opportunities. In addition, plaintiff has shown that he satisfies the statutory requirements to proceed in this matter without paying the Court's filing fee. And so, for the reasons discussed below, the Court: (1) **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion to dismiss and (2) **GRANTS** plaintiff's motion to proceed *in forma pauperis*. RCFC 12(b)(1).

### A.  The Court May Consider Plaintiff's Breach Of Contract Claims

As a preliminary matter, the Court possesses subject-matter jurisdiction to consider plaintiff's breach of contract claims arising under the Settlement Agreement. In this action, plaintiff seeks to recover relocation incentive payments due to the government's alleged material breaches of the Settlement Agreement that he entered into with the VA to resolve certain employment discrimination claims. *See generally* Compl.; *see also id.* at Ex. 1 at 1-2; Def. Mot. Ex. 1 at 1-2. The United States Court of Appeals for the Federal Circuit has held "that Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement." *Holmes*, 657 F.3d at 1312. The Federal Circuit has also held that a settlement agreement that inherently relates to monetary compensation, "through relationship to [a plaintiff's] future employment," contemplates money damages in the event of breach and may form the basis for establishing the Court's jurisdiction under the Tucker Act. *Id.* at 1316.

A review of the Settlement Agreement at issue in this case makes clear that this agreement contains provisions that inherently relate to monetary compensation through relationship to plaintiff's efforts to secure future employment. The Settlement Agreement provides that, among other things, the VA would provide a written reference for Mr. Oliva "and the assurance of a positive verbal reference, if requested." Def. Mot. Ex. 1 at 2. Because the Court finds that the Settlement Agreement relates to plaintiff's efforts to secure future

employment and, thus, contemplates money damages in the event of a breach of that agreement, the Court may consider plaintiff's breach of contract claims. *Holmes*, 657 F.3d at 1316.[4]

### B. Plaintiff Fails To State A Plausible Claim For Relocation Incentives

Turning to the merits of plaintiff's claims, a careful review of the complaint makes clear that plaintiff fails to plausibly allege that he is entitled to recover relocation incentive payments in this action. Plaintiff seeks to recover $172,628.00 in relocation incentive payments that he would have allegedly received if selected for two employment opportunities with the VA. Compl. at 3; *see generally* Civil Cover Sheet. In his response and opposition to the government's motion to dismiss, plaintiff argues that he states a plausible claim to recover these payments, because the position descriptions for the two employment opportunities—a VA health system administrator position based in Greenville, SC and a VA health system administrator position based in El Paso TX—state that relocation expenses are authorized, or may be authorized, for these positions. Pl. Resp. at 1, Ex. 1 at 1-2.

Plaintiff does not, however, allege any facts in the complaint to show that he would have actually received relocation incentive payments had he secured either of these employment opportunities. *See generally* Compl. Indeed, as the government correctly notes in its motion to dismiss, the OPM regulations that govern the authorization and payment of relocation incentives make clear that the fact that relocation incentives are authorized for a particular employment opportunity, alone, is not sufficient to demonstrate that such incentives would have actually been paid to plaintiff. Def. Mot. at 6. Rather, these regulations provide that the payment of relocation incentives must be made on a case-by-case basis and the regulations also require that the government establish a relocation incentive plan, and determine the amount of the relocation

---

[4] Plaintiff's employment discrimination claims appear to be based upon the Age Discrimination in Employment Act (the "ADEA"). Def. Ex. 2 at 1-2. Similar to Title VII employment discrimination claims, ADEA claims are enforced and reviewed by the EEOC and subject to judicial review by the U.S. district courts. *See* 29 U.S.C. § 633a(b) and (c). Additionally, the Court notes that it does not possess subject-matter jurisdiction to consider plaintiff's criminal law claim that the selecting official for one of the positions to which plaintiff applied violated Title 18, United States Code, Sections 1001 and 1501. *Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994).

incentives, before authorizing the payment of any relocation incentives. *See* 5 C.F.R. §§ 575.205; 575.207(a); and 575.208(a)(1).

Because plaintiff alleges no facts in the complaint to show that he was eligible to receive relocation incentives under the OPM's regulations, plaintiff's claim to recover such incentives is speculative at best. *See generally* Compl. Given this, the Court must dismiss plaintiff's claim for lost relocation incentives, pursuant to RCFC 12(b)(6).

### C. Plaintiff Plausibly Alleges Breach Of Contract Claims

The Court is less persuaded by the government's argument that the Court should dismiss plaintiff's breach of contract claims based upon the VA's alleged breach of the Settlement Agreement in March 2015 and February 2016.

First, a careful reading of the complaint shows that plaintiff states a plausible breach of contract claim based upon the VA's alleged failure to provide references in the manner prescribed by the Settlement Agreement and the agency's disclosure of the fact that plaintiff was on a temporary duty assignment. In this regard, plaintiff clearly alleges in the complaint that he "was not selected for the position of Healthcare Administrator due to the evasive employment reference check." Compl. at 2. And so, plaintiff sufficiently alleges that the VA's breach of the Settlement Agreement, by failing to provide a reference in the manner prescribed by the Settlement Agreement, resulted in his loss of an employment opportunity. *Id.*; *see also* Pl. Resp. at 2-4.

The government argues, nonetheless, that plaintiff has not stated a plausible breach of contract claim, because the job references that the VA provided were either neutral or positive. Def. Mot. at 1. But, even if the Court accepts the government's representation in this regard as true, plaintiff persuasively argues that the undisputed fact that the incorrect individual provided this job reference—and that the reference disclosed that plaintiff was serving in a temporary duty assignment—*could* have negatively impacted plaintiff's efforts to secure future employment. Pl. Resp. at 2.

The undisputed fact that the Settlement Agreement requires that plaintiff's original supervisor—Mr. Eitutis—provide the job reference also suggests that the VA recognized that allowing Ms. Hardmon to provide the reference could negatively impact plaintiff's efforts to

11

secure future employment. *See generally* Compl.; Def. Mot.; *see also* Def. Mot. Ex. 1 at 2. Given this, the Court declines to dismiss plaintiff's breach of contract claim based upon the February 2016 breach of the Settlement Agreement. RCFC 12(b)(6).

Plaintiff similarly states a plausible claim that the VA breached the Settlement Agreement in March 2015, when the agency disclosed his letter of reprimand to a potential employer. Compl. at 2. In this regard, there is no dispute that the VA's Office of Resolution Management determined that the VA breached the Settlement Agreement by making this disclosure. *Id.*; Def. Mot. at 8; Def. Mot. Ex. 2 at 4.

The government's argument that plaintiff fails to explain how the disclosure of the letter of reprimand resulted in the loss of a job offer is also misguided. Def. Mot. at 8. As plaintiff argues in his response and opposition to the government's motion to dismiss, the letter of reprimand was an adverse personnel action and the disclosure of this letter to a potential employer certainly *could* have negatively impacted plaintiff's prospects for future employment. Pl. Resp. at 2. Given this, plaintiff has at least plausibly alleged that the disclosure of the letter of reprimand resulted in his loss of future employment opportunities.

Because plaintiff has plausibly alleged in the complaint that the VA breached the Settlement Agreement in March 2015 and February 2016, and that these breaches resulted in his loss of employment opportunities, the Court declines to dismiss plaintiff's breach of contract claims.

### D. The Court Grants Plaintiffs' Motion To Proceed *In Forma Pauperis*

As a final matter, plaintiff has moved to proceed in this matter *in forma pauperis*. *See generally* Pl. IFP Mot. The Court may authorize the commencement of a lawsuit without prepayment of fees when a plaintiff submits an affidavit including a statement of all assets, a declaration that he is unable to pay the fees, and a statement of the nature of the action and a belief that he is entitled to redress. *See* 28 U.S.C. § 1915(a)(1); *see also id.* § 2503(d). In his application for waiver of the Court's filing fee, plaintiff provides a statement of his assets and liabilities and states that "because of [his] poverty, [he is] unable to pay" the Courts fees. *See generally* Pl. IFP Mot. Because the Court finds that plaintiff satisfies the statutory requirements to proceed *in forma pauperis*, the Court **GRANTS** plaintiff's motion to proceed *in forma pauperis*.

12

## V. CONCLUSION

In sum, the most generous reading of the complaint makes clear that plaintiff fails to state a plausible claim to recover relocation incentive payments. Plaintiffs has, however, plausibly alleged that the VA breached the Settlement Agreement in March 2015 and February 2016, and that these alleged breaches resulted in his loss of future employment opportunities. In addition, plaintiff has shown that he satisfies the statutory requirements to proceed in this matter without paying the Court's filing fee. And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss with respect to plaintiff's claim to recover relocation incentive payments;

2. **DENIES** the government's motion to dismiss with respect to plaintiff's breach of contract claims regarding the March 2015 and February 2016 breaches; and

3. **GRANTS** plaintiff's motion to proceed *in forma pauperis*.

The Court further requests that plaintiff consent to the Court's referral of this case to the Court of Federal Claims Bar Association *Pro Bono*/Attorney Referral Pilot Program for the potential representation of plaintiff by counsel. In the event that plaintiff consents to such referral, the Court makes no representation that the Bar Association will be successful in identifying possible *pro bono* counsel for plaintiff. If the Bar Association is able to identify possible counsel, plaintiff is not obligated to engage any particular attorney, nor is an attorney obligated to represent plaintiff. The Court does not endorse representation by any individual attorney. All decisions concerning representation, if any, will be by mutual agreement between plaintiff and an attorney.

And so, it is further **ORDERED** that on or before **August 17, 2018**:

1. Plaintiff shall **FILE** a notice indicating whether he consents to referral of this case to the Court of Federal Claims Bar Association Pro Bono/Attorney Referral Pilot Program; and

2. The parties shall **FILE** a joint status report setting forth a proposed schedule for the filing of the government's answer and for discovery.

IT IS SO ORDERED.

_____
LYDIA KAY GRIGGSBY
Judge