# In the United States Court of Federal Claims

No. 18-104C
Filed: May 1, 2019
NOT FOR PUBLICATION

| | |
|---|---|
| STEVEN J. OLIVA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

RCFC 12(b)(6); Failure To State A Claim; Breach Of Contract; Relocation Pay; Lost Salary.

*Emily A. Unnasch*, Counsel of Record, Venable LLP, Washington, DC; *James Y. Boland*, Of Counsel, Venable LLP, Tysons Corner, VA, for plaintiff.

*David R. Pehlke*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, Steven J. Oliva, brings this action to recover monetary damages from the government in connection with certain alleged breaches of an Equal Employment Opportunity ("EEO") settlement agreement (the "Settlement Agreement") by and between plaintiff and the United States Department of Veterans Affairs (the "VA").  *See generally* Am. Compl.  The government has moved to dismiss this matter for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Def. Mot.  For the reasons discussed below, the Court: (1) **GRANTS** the government's motion to dismiss and (2) **DISMISSES** the amended complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this breach of contract action, plaintiff, Steven J. Oliva, seeks to recover relocation incentive pay and lost salary from the government in connection with certain alleged breaches of the Settlement Agreement that he entered with the VA on or about January 30, 2015. *See generally* Am. Compl.; *see also* Pl. Ex. A1. Plaintiff periodically worked for the VA from 2000 until his termination from the agency in 2016. Am. Compl. at ¶¶ 21-23. After spending 8 years employed in the private sector, plaintiff returned to the VA in 2012, as an Associate Director of Pharmacy Customer Care at the Health Resource Center located in Waco, TX. *Id.* at ¶ 23. Thereafter, plaintiff worked as an Associate Director of Contract Management for the VA's Health Resource Center headquarters located in Topeka, KS and the Campus of the Central Texas Veterans Healthcare System located in Waco, TX. *Id.*

In the amended complaint, plaintiff alleges that the VA breached the Settlement Agreement in March 2015 and February 2016, respectively, and that he did not receive certain job offers due to these alleged breaches. *Id.* at ¶¶ 6-18. As relief, plaintiff seeks to recover $87,312.00 in relocation incentive pay related to a position located in Greenville, NC, and $289,564.00 in lost salary for the period of May 2016 to the present. *Id.* at ¶ 34; *see also id.* at ¶ 31, 33

### 1.    The OPM Relocation Incentive Regulations

As background, the Office of Personnel Management ("OPM") has promulgated regulations governing the payment of relocation incentives for federal employees. *See generally* 5 C.F.R. §§ 575.201, *et seq.* Under these regulations, an agency may pay a relocation incentive to a current employee who must relocate to accept a position in a different geographic area, if the agency determines that the position will likely be difficult to fill in the absence of an incentive. 5 C.F.R. § 575.201. Specifically, a relocation incentive may be paid to an employee who—

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the amended complaint ("Am. Compl."); the exhibits attached thereto ("Pl. Ex."); the government's motion to dismiss ("Def. Mot."); and plaintiff's response and opposition to the government's motion to dismiss ("Pl. Resp."). Unless otherwise noted, the facts recited herein are undisputed.

(1) Must relocate to a different geographic area (permanently or temporarily) to accept a covered position . . . in an agency when the position is likely to be difficult to fill . . . and

(2) Is an employee of the Federal Government immediately before the relocation.

5 C.F.R. § 575.205(a).

The OPM's regulations also provide that a relocation incentive may be paid only when the employee's rating of record for the position held immediately before the move is at least "Fully Successful" or equivalent. 5 C.F.R. § 575.205(c). Before paying such a relocation incentive, an agency must establish a relocation incentive plan which includes, among other things, the requirements for determining the amount of the relocation incentive. 5 C.F.R. § 575.207(a).

###    2.    The Settlement Agreement

In January 2015, plaintiff received a letter of reprimand for accusing a supervisor of pre-selecting an applicant for a position. Am. Compl. at ¶ 3. On January 30, 2015, plaintiff entered into the Settlement Agreement with the VA to resolve a formal grievance that he brought after receiving the letter of reprimand. *Id.* at ¶ 4.

Pursuant to the terms of the Settlement Agreement, the VA agreed to rescind the letter of reprimand and not to disclose the existence of this letter to anyone seeking an employment reference for plaintiff. *See generally* Pl. Ex. A1. Plaintiff also agreed to withdraw his informal EEO complaint, and to consider his formal grievance resolved, in exchange for the VA's commitment to undertake certain remedial measures delineated in the Settlement Agreement. *See id.* at 2. In this regard, the VA agreed to:

> [Provide a] [w]ritten reference for Mr. Oliva and assurance of a positive verbal reference, if requested—A written reference will be provided by Mr. Eitutis. Should Mr. Eitutis be asked to provide a verbal reference, he will not mention the retracted Reprimand and will limit information provided to that set forth in the written reference.

*Id.*; *see also* Am. Compl. at ¶ 5.

3.      **The March 2015 And February 2016 Breaches**

Plaintiff alleges that, in or around March 2015, he applied for a position as an Associate Director for the VA's El Paso, TX Medical Center (the "El Paso Position"). Am. Compl. at ¶ 6. Plaintiff further alleges that the posting for this position stated that the VA would authorize the payment of a relocation incentive to the individual hired for the position and that the agency established a relocation incentive plan and determined the amount of the relocation incentive pay. *Id.* at ¶ 7; *see also* 5 C.F.R. §§ 575.207(a); 575.208(a)(1).

Plaintiff alleges that the VA breached the Settlement Agreement in March 2015, when the agency "disclosed the existence of the Letter of Reprimand in contravention of the express terms of the Settlement Agreement," after being contacted to provide a reference in support of plaintiff. Am. Compl. at ¶¶ 9-10. Plaintiff contends that, if he had received an offer of employment for the El Paso Position, he would have been required to move a distance of more than 50 miles and that his job performance rating at the VA was at least "Fully Successful," or the equivalent, at the time that he submitted the employment application for the El Paso Position. *Id.* at ¶ 8. Given this, plaintiff also contends that he would have received relocation incentive pay in the amount of $86,304.00 to accept the El Paso Position. *Id.* at ¶ 31.

In 2015, plaintiff pursued a claim with the VA's Office of Resolution Management, ("ORM") alleging that the VA breached the Settlement Agreement by disclosing the letter of reprimand to a potential employer. *Id.* at ¶ 11. In July 2015, the ORM found that the VA breached the Settlement Agreement by disclosing the letter of reprimand. *Id.* at ¶ 12. And so, the ORM offered plaintiff the option to either void the Settlement Agreement and pursue an EEO claim, or to ratify that agreement. *Id.* After plaintiff elected to ratify the Settlement Agreement, the parties ratified the agreement on July 7, 2015. *Id.* at ¶ 13; *see also* Pl. Ex. A2.

Thereafter, plaintiff continued his efforts to secure future employment. *Id.* at ¶ 14. Plaintiff applied for a position as a Healthcare Administrator with the VA's Greenville, NC Healthcare Center (the "Greenville Position"). *Id.* Plaintiff alleges relocation incentive pay was also available for this position and that the VA established a relocation incentive plan and determined the amount of the relocation incentive for this position. *Id.* at ¶ 15; *see also* 5 C.F.R. §§ 575.207(a); 575.208(a)(1).

4

Plaintiff also alleges that the VA breached the Settlement Agreement in February 2016, when the agency disclosed that plaintiff was assigned to a temporary duty station—and provided the contact information for plaintiff's temporary duty supervisor—after being contacted for an employment reference for plaintiff. Am. Compl. at ¶ 17. In addition, plaintiff alleges that he did not receive an offer of employment for the Greenville Position due to the VA's actions. *Id*. at ¶ 18. And so, plaintiff contends that, if he had received an offer of employment for this position, he would have been required to move a distance of more than 50 miles and that his job performance rating at the VA was at least "Fully Successful," or the equivalent, at the time that he submitted the employment application for the Greenville Position. *Id*. at ¶ 16. Given this, plaintiff also contends that he would have received relocation incentive pay in the amount of $87,312.00 to accept the Greenville Position. *Id.* at ¶ 31.

In April 2016, the VA terminated plaintiff's employment with the agency. *Id*. at ¶ 24.

### B.    Procedural History

Plaintiff commenced this action on January 22, 2018. *See generally* Compl. After the government filed a motion to dismiss this matter, the Court issued a Memorandum Opinion and Order granting-in part and denying-in part the government's motion to dismiss on July 18, 2018. *See generally Oliva v. United States*, No. 18-104C, 2018 WL 3455135 (Fed. Cl. July 18, 2018).

On August 1, 2018, with the consent of plaintiff, the Court referred this matter to the Court of Federal Claims Bar Association *Pro Bono/*Attorney Referral Pilot Program for the potential representation of plaintiff by counsel. *See generally* Order, dated Aug. 1, 2018. On September 26, 2018, plaintiff filed an amended complaint after retaining counsel. *See generally* Am. Compl. On October 29, 2018, the government filed a motion to dismiss. *See generally* Def. Mot.

On December 10, 2018, plaintiff filed a response and opposition to the government's motion to dismiss. *See generally* Pl. Resp. On December 21, 2018, the government filed a reply in support of its motion to dismiss. *See generally* Def. Reply.

This matter having been fully briefed, the Court resolves the pending motion to dismiss.

III.    **LEGAL STANDARDS**

A.    **Jurisdiction And Breach Of Contract Claims**

Under the Tucker Act, the Court possesses subject-matter jurisdiction to consider express or implied-in-fact contract claims against the United States.  *See Aboo v. United States*, 86 Fed. Cl. 618, 626-27 (2009).  Plaintiff bears the burden of proving the existence of a contract with the United States and he must demonstrate that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights."  *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).

To pursue a breach of contract claim against the United States under the Tucker Act, a plaintiff must have privity of contract with the United States.  *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citations omitted) ("[T]he 'government consents to be sued only by those with whom it has privity of contract.'").  Plaintiff must also support his contract claim with well-pleaded allegations going to each element of a contract.  *See Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (holding that to invoke the jurisdiction of this Court under the Tucker Act, a plaintiff must present a well-pleaded allegation that its claims arose out of a valid contract with the United States); *see also* RCFC 9(k) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies."); *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010).

The requirements for establishing a contract with the United States are identical for express and implied-in-fact contracts.  *See Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006); *Huntington Promotional & Supply, L.L.C. v. United States*, 114 Fed. Cl. 760, 767 (2014) ("The elements are the same for an express or implied-in-fact contract . . . .").  Specifically, a plaintiff must show:  (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  In addition, a government official's authority to bind the United States must be express or implied.  *Roy v. United States*, 38 Fed. Cl. 184, 188-89

(1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).  And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id*. at 187.[2]

Specifically relevant to this matter, the United States Court of Appeals for the Federal Circuit has held "that Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement." *Holmes v. United States*, 657 F.3d 1303, 1312 (Fed. Cir. 2011) ("We do not view Title VII's comprehensive scheme as a bar to the exercise of [Tucker Act] jurisdiction.").  The Federal Circuit has also held that, "when a breach of contract claim is brought in [this Court], the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required [to establish subject-matter jurisdiction]." *Id*. at 1314.  But, the Federal Circuit has recognized that that the mere existence of a contract does not always means that Tucker Act jurisdiction exists.  *Id*.  For example, a Title VII settlement agreement that involves purely nonmonetary relief would not give rise to Tucker Act jurisdiction.  *Id*. at 1315.  And so, the Court may require a demonstration that a settlement agreement could fairly be interpreted as contemplating money damages in the event of breach to establish subject-matter jurisdiction.  *Id*.

### B.    RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), this Court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also* RCFC 12(b)(6).  To survive a motion to dismiss pursuant to RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And so, when the complaint fails to "state a

---

[2] A government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009), *aff'd*, 385 F. App'x. 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).  On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007) (citations omitted).  In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority.  *Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity" and determine whether it is plausible, based upon these facts, to find against defendant. *Id*. at 679.

## IV.    LEGAL ANALYSIS

The government has moved to dismiss this matter pursuant to RCFC 12(b)(6), upon the grounds that:  (1) plaintiff fails to state a plausible claim for relocation incentive pay and (2) plaintiff fails to state a plausible claim for lost salary. *See* Def. Mot. at 5-9. Plaintiff counters in his response and opposition to the government's motion to dismiss that he has plausibly alleged claims for relocation incentive pay and lost salary in the amended complaint because:  (1) he would have received and accepted an offer of employment for the Greenville Position prior to his termination from the VA, but for the VA's breach of the Settlement Agreement and (2) his inability to obtain new employment was the direct and foreseeable consequence of the VA's breaches of the Settlement Agreement. Pl. Resp. at 4-6.

For the reasons discussed below, the most generous reading of the amended complaint makes clear that plaintiff has not stated plausible claims to recover relocation incentive pay or lost salary in this case. And so, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the amended complaint. RCFC 12(b)(6).

### A.    Plaintiff Fails To State A Plausible Claim For Relocation Incentive Pay

As an initial matter, a careful review of the amended complaint makes clear that plaintiff fails to plausibly allege that he is entitled to receive relocation incentive pay. In the amended complaint, plaintiff alleges that he is entitled to recover $87,312.00 in relocation incentive pay that he would have received to accept the Greenville Position. Am. Compl. at ¶ 31; *see also* 5 C.F.R. § 575.205; Pl. Resp. at 4-6. While plaintiff has plausibly alleged that the VA determined that a relocation incentive would be provided for this position, plaintiff fails to sufficiently allege facts in the amended complaint to show that he would have been eligible to receive this pay. *See generally* Am. Compl.

First, plaintiff alleges no facts in the amended complaint to show that he was a federal employee immediately before he would have relocated to Greeneville, NC, as required by the

OPM regulations.  The OPM regulations require, among other things, that an employee "[i]s an employee of the federal government *immediately before the relocation*" to receive relocation incentive pay.  *See* 5 C.F.R. § 575.205(a)(2) (emphasis supplied).  But, plaintiff merely alleges in the amended complaint that he was an employee of the federal government "at all relevant times" and that "[a]t the time he submitted his application and interviewed for the [Greenville Position, he] met the requirements to receive relocation incentive pay."[3]  Am. Compl. at ¶ 16; *see also* Pl. Resp. at 5-6.  Indeed, plaintiff neither states when he learned that the VA would not offer him the Greenville Position, nor that he was a federal employee when he learned this information.  *See generally* Am. Compl.  And so, plaintiff has not sufficiently alleged facts in the amended complaint to show that he met the requirements to receive relocation incentive pay.

Plaintiff also has not sufficiently alleged in the amended complaint that he had a "Fully Successful," or equivalent, rating of record immediately before he would have relocated to Greenville, NC, as required by the OPM regulations to receive relocation incentive pay.  *See* 5 C.F.R. § 575.205(c) (stating that an employee's rating of record for the position held immediately before the move must be at least "Fully Successful," or equivalent, to receive relocation incentive).  Plaintiff alleges in the amended complaint that, "*at the time he submitted his application*, [his] rating of record was at least 'Fully Successful' or the equivalent."  Am. Compl. at ¶ 16 (emphasis supplied).  But, the amended complaint is silent regarding whether plaintiff had a "Fully Successful," or equivalent, rating of record when he learned that he would not be offered the Greenville Position.  *See generally* Am. Compl.  And so, again, the amended complaint does not contain sufficient factual allegations to plausibly show that plaintiff would have been eligible to receive relocation incentive pay to accept the Greenville Position.

The Court is also not persuaded by plaintiff's argument that he has demonstrated eligibility to receive relocation incentive pay because the VA authorized a relocation incentive for the Greenville Position.  *Id.* at ¶ 15; *see also* 5 C.F.R. § 575.208(a).  As the government correctly observes in its motion to dismiss, the OPM regulations that govern the authorization of relocation incentive pay make clear that the VA's authorization of a relocation incentive, alone, is not sufficient to show that plaintiff would have received relocation incentive pay for the

---

[3] It is undisputed that plaintiff was terminated from his position with the VA in April 2016.  Am. Comp. ¶ 27.

Greenville Position.  Def. Mot. at 6-7; *see also* 5 C.F.R. § 575.208(a) (requiring that, among other things, the agency document in writing the basis for the amount and timing of relocation incentive pay and length of the required service period, and case-by-case determinations for each employee).  Notably, plaintiff alleges no facts in the amended complaint to show that the VA determined the amount of relocation pay that he would have received to accept the Greenville Position.  *See generally* Am. Compl.  Plaintiff also does not explain how he calculated the $87,312.00 in relocation incentive pay that he seeks in the amended complaint.  *Id.*

Indeed, as the Court previously held in the July 18, 2018, Memorandum Opinion and Order in this case, plaintiff's claim to recover relocation incentive pay is speculative at best. *Oliva v. United States*, No. 18-104C, 2018 WL 3455135 at *6 (Fed. Cl. July 18, 2018).  Given this, plaintiff simply has not plausibly alleged that he was eligible to receive relocation incentive pay under the OPM's regulations.  And so, the Court must dismiss plaintiff's claim for relocation incentive pay.

### B.    Plaintiff Fails To State A Plausible Claim To Recover Lost Salary

Plaintiff also fails to plausibly allege a claim for lost salary.  In the amended complaint, plaintiff seeks to recover $289,564.00 in lost salary, for the period of May 2016 to the present, and plaintiff alleges that the VA's breaches of the Settlement Agreement were the but-for cause of his lost salary.  *See* Am. Compl. at ¶ 33; *see also* Pl. Resp. at 7 ("[T]he Government's breaches of the settlement agreement were the but-for cause of [plaintiff's] lost salary . . . .").  But, plaintiff does not allege any facts in the amended complaint to show that the lost salary that he seeks in this action resulted from the VA's breaches of the Settlement Agreement.  *See generally* Am. Compl.

In this regard, plaintiff alleges in the amended complaint that the VA breached the Settlement Agreement in February 2016, when the agency disclosed that he was assigned to a temporary duty station—and provided the contact information for his temporary duty supervisor—after being contacted for an employment reference for plaintiff.  *Id.* at ¶¶ 17-18.  But, as the government correctly observes in its motion to dismiss, the VA terminated plaintiff's employment with the agency two months after this alleged breach occurred—in April 2016.  Def. Mot. at 3.

Plaintiff acknowledges in the amended complaint that his lost salary started to accrue in May 2016, shortly after his termination from the VA.  Am. Compl. at ¶¶ 32-33.  And so, the factual allegations in the amended complaint show that the termination of plaintiff's employment in April 2016, rather than the VA's alleged breach of the Settlement Agreement in February 2016, was the proximate cause of plaintiff's lost salary.  *Id.*  Given this, plaintiff has not plausibly alleged a claim to recover lost salary based upon the alleged breaches of the Settlement Agreement.  RCFC 12(b)(6); *see also San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989) (stating that a breach of contract claim requires:  "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach"); *see also Fifth Third Bank v. United States*, 518 F.3d 1368, 1374 (Fed. Cir. 2008) (stating that to meet the causation requirement in a breach of contract case plaintiff must show that "the damages would have not occurred but for the breach").[4]

## V.    CONCLUSION

In sum, the most generous reading of the amended complaint makes clear that plaintiff fails to state plausible claims to recover relocation incentive pay and lost salary.  And so, for the foregoing reasons, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the amended complaint.

The Clerk shall enter judgment accordingly.

No costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge

---

[4] The Court understands that plaintiff is pursuing a wrongful termination claim against the VA before the United States Merit Systems Protection Board.  *See* Am. Compl. at ¶ 24; Def. Mot. at 8.